This case is 16-10954, Katie Doe v. Brown University, et al. Good morning, Your Honor. My name is Phil Wilder. I'm here representing Jane Doe, seeking the reversal of the District Court's grant of summary judgment, entry of judgment, dismissing her case, notwithstanding the absence of discovery. Our position is... Before you get to your position, whichever way it comes out, why should we maintain her name as sealed? It's very unusual for this court to keep records under seal. I understand, and the case was brought originally as a pseudonym. It happens to be a practice that my firm does because we do a lot of Title IX reverse discrimination actions. Why at this point? I don't mind calling Jane Doe Jessica Harrell. I will call her Jessica. This was an issue which I wasn't prepared to discuss today, but I have no problem with calling her Jessica. Thank you for the concession. Sorry to interrupt. I wanted to say that our position is there's material issues of fact, and the Rule 56D request should not have been given the back of the hand. I want to focus on three points, and I'll answer any and all questions you have. The three points go to what I would call shortcuts made by the professor, by the university, and by the District Court. Collaboration. It's got sort of a dirty name maybe, but it shouldn't because Walter Isaacson, in his book on innovation, talks about collaboration as being essential. And we have our part of the brief, which was presented to the District Court, about collaboration and the educational process. Are you saying the term is too vague to have been enforced, or that it's a good thing and the university should not take a position against it? No, I'm saying that you have to be clear in order to be fair, in order not to be unfairly selected. Collaboration here was something which we presented clearly in the record before the District Court, I think it was before the university. The majority of students in this class collaborated. Counsel, I think basically your opponent's position is that really almost none of this matters, because your client, perhaps foolishly, submitted a statement to the disciplinary body group. They characterize it as an admission that she had, let me finish please, they characterize it as an admission. My question is, if we accept that view, that there's no real material dispute about that, that the only way to plausibly read that is an admission to the charged conduct. Is there anything left of your case? Yes, but it's not admission. And what I would recommend... I ask you to accept my premise. Is there anything left of your case? Yes, because the procedures were not followed at the university. The reason why I resisted, her statement is page 104 of the record, the hearing is 388 to 413 of the record. She admitted to collaboration, but that is not in itself a violation of the academic code, that's why I say no. Because what she admitted to, fairly read, remember she's a student, she shouldn't be out to a standard of a lawyer, but she said she collaborated. The majority of her students said that. Indeed, the panel chair said at the hearing, it appears that a majority quote made a mistake. They collaborated. So what I would say... The district court says she did not admit to collaboration. He says collaboration is not really the issue. The issue is, essentially, she adopted another student's answer as her own. That goes beyond... I understand that, and what I'm saying is she didn't admit to that. You can say she admitted to collaboration, and this is why I'm parsing your question the way I am. She admitted to collaboration. She said that most students in the class collaborated, but she did not admit to, in fact said, I didn't copy her answer. You know, the other student's answer. She denied that element of, you know, what you could call excessive collaboration. Okay? That's the answer. And because that was the record before in the university, that case must go on to proper adjudication. First of all, the professor should have been made clear in writing, you know, what the level of collaboration was permissible, what was not. She did not. The university relies on an oral statement not presented at the hearing, never presented to Jessica to contradict at the hearing. She didn't testify at the hearing. This is a case, I believe, and there's a Second Circuit case, 460 FedSecond 545, where there are times when cross-examination is essential, where there's a suspension involved, and there was here, for something critical. The professor was her accuser. It was her statements that were critical. She didn't appear. And for the district court to say, well, there's not a problem here in terms of the academic code saying you have a right to confront because she just didn't testify, oh, I'm sorry, that's just not good enough. This was a situation where you had to have an effective cross-examination as to what instruction did you really give? Because what Jessica said in her appeal statement was, oh, I didn't hear it. Said it in her written statement, I didn't hear it. And it's not in the written syllabus. It's not online. It was in terms of the instructions of don't collaborate on this midterm exam. So you have unclarity. And that's why I call it a shortcut as a professor. As to the university law, what they needed to do was to have an effective right to confront. And that meant Clark had to testify. That meant to the extent that they really whacked Jessica in the end in a way that they didn't on TL. And whatever excuse you can say is for a different sanction, this was really disparate. Because not only is there a suspension and not the TL, she just didn't need credit for the midterm. You don't get credit for the class. You are suspended. All this is transcript notation. You're cut off from the university. We're not going to give you support in the future. And I can tell you from all the Title IX cases, what is really the harshness is the transcript notations. Because you can't get in graduate school. Counsel, what? Again, the district court seemed to focus on the two exam answers. Look at those answers, and it is frankly stunning how similar they are. And so the court looked at that and said, all this focus on the code of conduct and the procedures that are afforded to the student, it sort of doesn't matter because if you look at the crime, if you will, it's clear that the crime was committed. I mean, isn't that in effect what the district court was saying? And I absolutely agree with that court decision. She's guilty, so all this thing about due process, it doesn't matter. And I have to say, I've dedicated a lot of my career to fighting that notion. So you say she has a contractual right to due process that would have to be followed even if the conclusion they reached was substantiated. Is that correct? Correct. And to her defense, number one, she adamantly denied in her written statement and in her oral testimony at the hearing that she cheated. Why would I cheat? I'm an A student. I'm getting an A in the class. Because she cheated the year before and the university had no reason, was certainly not compelled to conclude that she did not cheat this time in adopting another student's answer. The answer to that is fair enough if you have a fair process. She should have been entitled to have cross-examination of her accuser in this instance because it was critical. Why was that critical when you compared the two answers? She had adequate notice of the charges. But she's the one getting hit. Why are you saying with TL, oh, you just don't get credit for the midterm exam, because TL did not testify at her hearing. In addition to Clark not being subject to cross-examination, TL wasn't either. Now, toward the end of the hearing, or at the end of the hearing, Jane Doe said, I will come back. Because after saying, you know, multiple times, I didn't cheat. And by the way, at 4.08 of the transcript, she says, I really want to finish at Brown. The chair says, well, I'm sure we'll see you back. I can't see the findings. I'm sure we'll see you back next semester. And that's the way it stood then. And she agreed. She, Jessica, agreed to go, to return. She was not asked to return. Subsequent to the hearing, TL gave testimony. To the extent that the hearing panel relied on TL's statements, Jessica wasn't given the opportunity to confront that evidence. That's part of the due process of confronting evidence at first to you. That's the problem. Thank you. Okay. I didn't get to the third point about their material issues. We have your brief. Thank you. And that's what I'll have to say. A lot of words. Good morning. May it please the court. Thomas Bender on behalf of Brown University. It's difficult to know exactly where to start. Well, why don't you start here then. Is there any dispute about whether the plaintiff had a copy of or access to the code itself? I don't believe that there is, no. She actually filed an affidavit saying that she got a copy of the code when she entered Brown University. And that lays out, does it not, the procedural opportunities that she would have to call witnesses, et cetera. Yes, it does. Okay. Let me ask you, I think it's a similar question to the one that Judge Howard just posed. The code says very clearly under student rights that the case administrator will provide the accused student with a list of persons from within the university community who by prior experience and interest can provide knowledgeable advice. Your opponent says that was never done. The district court frankly doesn't address that at all. They don't address it either in your brief because you seem to take the position that any procedural, any contractual breach by the university doesn't matter because she gave a statement of admission. Is there any evidence in the record that she was ever given this list of individuals who could advise her as to how she should participate in this process? No, there is no evidence one way or the other. And that's because this process began as a motion to dismiss in lieu of a complaint. And I had attached a written statement. I used a written statement that she had referred to in her complaint. The written statement that she gave to the committee that I asserted was that admitted conduct that constituted a violation of the academic code. It specifically, and at that point they replied, did a reply, and then the judge converted it to a motion for summary of judgment, gave them the opportunity to submit any additional materials in order to apparently explain the written statement admitting that conduct. She filed an affidavit in response to that. And then I filed, was given the opportunity to file a response to that. And because it had been converted to summary judgment, I was able to put in the transcript of the actual academic code conduct hearing that she had and that TL had had. And in opposing summary judgment, did she say there was this violation of the code, I was never given the names of any academic? No, no, she was not. So from Brown's point of view, that was not an issue in these proceedings? It did not come to that point. I mean, I know what happened, but that was not made part of the record, because they had talked with the case administrator. I think the way that you can look at this case is through a breach of contract analysis. And I would refer you to Doe v. Brown University. I don't have to give you the citation to that, because right now there's about five Doe v. Brown universities in the district court. It's 2016 Westlaw 5409241, and it's a district court decision by Judge Smith where he applied basically the breach of contract to a similar type of thing where the plaintiff had, this was a disciplinary process that involved sexual assault, and he claimed there were breaches in the process as it went along. And Judge Smith applied the regular contract analysis, which includes showing that not only do you have to show that there was a breach of the contract, here a procedural right under the code, you also have to show that that breach caused you damages. And our position is that she admitted in the written statement to the committee, and in her testimony to the committee, she admitted to conduct that constituted an academic code violation. Okay. So let's take a conventional contract analysis. And whether this is supported by the summary judgment record is certainly something we have to look at very carefully. But assume there was a basis in the summary judgment record for concluding that, and I understand this to be your opponent's position, that she was never given this list of persons who could advise her as to how she should participate. So that's a breach. The code says she is to get such a list, she never got it. It seems like a clear breach. The question would then be that whether it's a material breach. Material in the sense, for example, that in the absence of any advice, she in a very ill-conceived way gave this statement admitting to things, and then everything followed from that. Could the fact finder conclude that that breach by the university was material in that lacking the advice or at least lacking the opportunity to consult with somebody, she made some ill-considered decisions, including giving this statement of admission, and everything flowed from that? Why would that be a classic factual question for the fact finder to evaluate to decide whether that breach was material? Well, because it would still be her burden to show that that breach was prejudicial to her. Okay. And I fail to see how it would change if she had an advisor. Let's presume that she told the truth when she wrote the written statement where she said that she used the words. She said it was late at night, she was exhausted, she had many projects to do, she wasn't thinking, and this other woman, TL, was talking about how she was going to answer the question, and I was writing down at the same time, and she said, I quote, I used her suggestions. And in her hearing testimony, it wasn't exactly testimony because it's not under oath, she said that she didn't know whether collaboration was allowed on this particular test or not, and she admitted to actually being in the same room, and she was writing it down, and whose thoughts were alert. Counselor, it seems to me the logic of your position is that no matter what the nature of any contractual breaches might be by the university, in terms of what this code promises or how significant they were, as long as the student admits to the charges, none of those contractual breaches matter. That seems to be the logic of your position. Well, I think that, I won't say that none of them do, but I don't see any of them here, because if she had had an advisor, and one of the reasons that we had argued that it wasn't a breach, that she never asked for an advisor. This woman had been through this process just a semester before. If she was given a list of individuals with whom she could consult, and then she never does anything about, that may have a very different situation. But if she has an advisor, how is her strategy for the hearing going to change? Well, she might never have given that statement. Then if she never gave that statement, then the two answers are absolutely identical, and my brother's counsel admitted as such, he conceded that as much to Judge McConnell, that he could not argue that the two answers were not the same answer. There's no genuine dispute that they are not the two answers. And if she had never testified before the hearing committee, I presume that based on the fact that the two answers were identical, that she would have been found guilty. Okay, so they're identical. Well, maybe 2L, excuse me, maybe T.L. was the culprit, if you will, and not Jessica. Well, the identicality is certainly very troubling. But as to who was responsible for the plagiarism, that could be another question. Well, they were both found responsible for violations of the academic code, because it is a violation of the academic code to render assistance to somebody when assistance is not permitted on the exam. And the only reason is a much less egregious offense. No, that's not correct. Because the reason that the punishments were different was because that was the first academic code violation for T.L. For Jessica, she had had an academic code violation the year before. Normally, you have to wait until the last semester of your senior year to petition to have that taken off your record. She petitioned the previous year. She had it taken off her record approximately one month before this midterm examination. And it was after. If you go back to the transcript of her hearing, she was worried about them kicking her out of Brown. She said she just wanted to continue her time here at Brown. And the chairman of the committee tried to tell her that we want you to finish from Brown. We want you to get your degree from Brown. It was only after they found her responsible for that that the case manager for it gave them her prior record, that she had actually had another one. And that's when the – and actually, on appeal, the actual committee members had decided that both notations, they were going to put the former notation back on her transcript. But on appeal, the administrator who took the appeal said, we won't include that as part of the penalty or sanction. When in the process did they take the statement from T.L. about what happened? They had two hearings, one right after the other. Jessica's was first, and then they had T.L.'s hearing. And that was the first that they had heard from T.L. So Jessica never had a chance to question T.L.? No, she did not. Did in the – She didn't ask to. Okay. In the appellate process, did she make any claim that that was a right that she should have been afforded? I cannot recall at this point. Okay. Thank you. Thank you. Safe juries back.